18-1208-bk
*In re: SageCrest II LLC, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.
WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST
CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION
"SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON
ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second
Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in
the City of New York, on the sixth day of March, two thousand nineteen.

PRESENT:   BARRINGTON D. PARKER,
           DENNY CHIN,
           RICHARD J. SULLIVAN,
                *Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

IN RE: SAGECREST II LLC and SAGECREST HOLDING
LIMITED,

*Debtor*,

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

EQUAL OVERSEAS CONSULTING, LTD,

*Creditor-Appellant*,

v.                                                          18-1208-bk

JOHN D. HUBER, Trustee of the SageCrest Liquidating
Trust,

*Debtor-Appellee.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR CREDITOR-APPELLANT: KEVIN J. NASH (Joseph T. Donovan, *on the brief*), Goldberg Weprin Finkel Goldstein LLP, New York, New York.

FOR DEBTOR-APPELLEE: LAURENCE MAY, Eiseman Levine Lehrhaupt & Kakoyiannis, P.C., New York, New York.

Appeal from the United States District Court for the District of Connecticut (Bolden, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Creditor-appellant Equal Overseas Consulting, Ltd ("Equal") appeals from the district court's judgment entered March 31, 2018, affirming the order of the United States Bankruptcy Court for the District of Connecticut (Shiff, *B.J.*) entered December 23, 2015. In its order, issued after a two-day trial, the bankruptcy court sustained the objection of debtor SageCrest II LLC ("SageCrest") to Equal's proof of claim, holding that the consulting agreement upon which Equal's claim was based was unenforceable. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

This case arises out of two agreements involving a hotel property located in Canada. In October 2006, during bankruptcy proceedings in Canada, a Canadian court received offers for the purchase of the property. Two bidders, SageCrest and Jean-Daniel Cohen ("Cohen"), entered into an agreement (the "Settlement Agreement"),

pursuant to which Cohen and his affiliate, Equal Group, agreed to withdraw their financial support of a competing bid and to refrain from submitting their own bid or supporting any alternative bid. In return, SageCrest agreed to pay Cohen a "fixed retainer" of $1.369 million when SageCrest Dixon, Inc. ("Dixon"), an affiliated entity, took ownership of the property; a fixed retainer of $1.379 million one year later; and an $850,000 consulting fee. Appx. at 554.[1] On October 20, 2006, SageCrest resubmitted its bid for the property, but neither SageCrest nor Cohen informed the Canadian court of the Settlement Agreement. The Canadian court thereafter approved SageCrest's bid, and SageCrest acquired the property.

In December 2006, as contemplated by the Settlement Agreement, SageCrest and Cohen entered into a consulting agreement (the "Consulting Agreement") that named Equal Group as SageCrest's redevelopment consultant and incorporated the Settlement Agreement's payment provisions. The Consulting Agreement also contained a choice-of-law provision, stipulating that Canadian law governed.

In 2008, SageCrest and Dixon separately filed for bankruptcy in the District of Connecticut; their cases were jointly administered. On September 23, 2008, Equal filed a proof of claim -- the subject of this appeal -- based on SageCrest's failure to make the second retainer and consulting payments required by the Consulting

---

[1]     All currency figures are stated in Canadian dollars.

Agreement. The bankruptcy court, choosing not to determine which law applied, held that under both Canadian and American law the Consulting Agreement was unenforceable because it was the product of collusion and was not supported by consideration. On March 30, 2018, the district court affirmed, holding that American law applied and the Consulting Agreement was the product of collusion and therefore unenforceable. The district court did not reach the question of consideration. Judgment was entered thereafter, and this appeal followed.

## DISCUSSION

Three issues are presented: whether (1) American or Canadian law applies; (2) the Consulting Agreement was the product of collusion; and (3) the Consulting Agreement lacks consideration. "The rulings of a district court acting as an appellate court in a bankruptcy case are subject to plenary review." *In re Stoltz*, 315 F.3d 80, 87 (2d Cir. 2002). Accordingly, "we review the bankruptcy court decision independently, accepting its factual findings unless clearly erroneous but reviewing its conclusions of law *de novo*." *In re Baker*, 604 F.3d 727, 729 (2d Cir. 2010) (internal quotation marks omitted). "Additionally, we may affirm on any ground that finds support in the record." *In re Lehman Bros. Holdings Inc.*, 761 F.3d 303, 308 (2d Cir. 2014).

1.      **Choice of Law**

Equal's principal argument on appeal is that Canadian law should apply per the Consulting Agreement's choice-of-law provision, rather than American law, the

law of the forum. The bankruptcy court did not resolve the choice-of-law issue based on its conclusion that "the same result follows with the application of either." S. Appx. at 11. The district court, by contrast, concluded that American law applies. Whether there is a conflict of law issue is a legal question. *See In re Air Crash Off Long Island*, 209 F.3d 200, 225 (2d Cir. 2000) (Sotomayor, J., dissenting) (including conflict of law issues as a type of legal question). We agree with the bankruptcy court that no conflict exists because, as discussed below, the Consulting Agreement is unenforceable under both Canadian and American law.[2]

## 2. Collusion

The bankruptcy court held that the Consulting Agreement was not enforceable under the doctrine of *in pari delicto*, which is recognized under both American and Canadian law. *See, e.g.*, *Republic of Iraq v. ABB AG*, 768 F.3d 145, 160 (2d Cir. 2014); *Cement LaFarge v. B.C. Lightweight Aggregate*, 1 S.C.R. 452, 476 (S.C.C. 1983). Under the *in pari delicto* doctrine, "a plaintiff who has participated in wrongdoing equally with another person may not recover from that other person damages resulting

---

[2] The district court concluded that enforcing the *choice-of-law clause* would violate public policy. *See Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1362-63 (2d Cir. 1993) (holding a court should consider whether a "clause[] contravene[s] a strong public policy of the forum state" in determining if it is unreasonable)). While we agree that enforcing the Settlement Agreement as a whole contravenes public policy because it was the product of collusion, we are doubtful that enforcing the choice-of-law clause -- *i.e.*, applying Canadian law -- would contravene public policy. In light of our disposition of the question of collusion, we need not decide whether the district court was correct as to the enforceability of the choice-of-law clause.

from the wrongdoing." *Republic of Iraq*, 768 F.3d at 160; *see also Hall v. Hebert*, 2 S.C.R. 159, 173 (S.C.C. 1999) (holding that the *in pari delicto* doctrine prevents recovery from an illegal contract).

Here, the bankruptcy court found that the Settlement Agreement was a "collusive thwarting of a rival bid" because it "was a side-deal between [SageCrest] and Cohen under which, for a pay-off, Cohen agreed to cease competing with [SageCrest] for the Property." S. Appx. at 15. This factual finding is not erroneous, let alone clearly erroneous. Pursuant to the Settlement Agreement and Consulting Agreement, Cohen agreed to withdraw his support for all competing bids and to refrain from submitting a bid himself in exchange for a guaranteed payment of more than $3.5 million.

Under American law, such an agreement is "antithetical to the Bankruptcy Code," S. Appx. at 17, and clearly violates 11 U.S.C. § 363(n) because a "payment . . . to induce [another] to drop out of the bidding . . . comes close to the classic collusive bidding against which the statute is directed," *In re New York Trap Rock Corp.*, 42 F.3d 747, 753 (2d Cir. 1994); *see United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 879 F.2d 20, 28 (2d Cir. 1989) ("[I]llegal agreements, as well as agreements contrary to public policy, have long been held to be unenforceable and void.").

Relying exclusively on *In re GSC, Inc.*, 453 B.R. 132 (Bankr. S.D.N.Y. 2011), Equal argues that the Settlement Agreement was not collusive because it resulted in a higher recovery, which is "antithetical to the notion of collusion." Appellant's Br. at 23.

In *In re GSC*, the bankruptcy court considered "[a]n agreement between two bidders resulting in a single bid in exchange for consideration," and found that it did not constitute collusion because the resulting single bid raised the sale price. *In re GSC*, 453 B.R. at 154. *In re GSC* is inapposite, however, because SageCrest and Cohen did not submit a joint bid. *See id.* (noting that the parties "combined their bids to *raise* the sale price" and citing cases with joint bids for support). Instead, as in *Trap Rock*, SageCrest induced Cohen to withdraw from the bidding process, which is close to a case of "classic collusive bidding." *In re New York Trap Rock Corp.*, 42 F.3d at 753. If SageCrest and Cohen had not colluded but engaged in a good faith bidding process, the final price might have been higher. The Settlement Agreement, therefore, is not enforceable under American law.

In addition, such an agreement violates Canadian law, which makes it a crime to be a party to bid-rigging -- *i.e.*, to participate in "an agreement . . . between or among two or more persons whereby one or more persons agrees or undertakes not to submit a bid in response to a call or request for bids." Competition Act, R.S.C. 1985, c C-34, s.47 (defining bid-rigging). Indeed, Cohen's own counsel recognized that the Settlement Agreement "may expose [Cohen] to criminal and civil charges and/or claims for bid-rigging." Appx. at 549. Moreover, Canadian courts have made clear that "[n]o action can be brought for the purpose of enforcing an illegal contract whether directly or indirectly, or of recovering a share of the proceeds of an illegal transaction, by any

parties to it." *Major v. Canadian Pac. Ry.*, 64 S.C.R. 367, 374 (S.C.C. 1922) (internal quotation marks omitted). Therefore, because the Settlement Agreement required Cohen to refrain from submitting a competing bid or supporting any alternative bid, in return for a substantial payment, a Canadian court also would have found the Settlement Agreement unenforceable.

**3.      Consideration**

Because we affirm the bankruptcy court's decision on the grounds that the Consulting Agreement was the product of collusion and unenforceable, we need not reach the question of consideration. *In re Lehman Bros. Holdings Inc.*, 761 F.3d at 308 ("[W]e may affirm on any ground that finds support in the record.").

\* \* \*

We have considered Equal's remaining arguments and conclude they are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk